(13 Misc. Rep. 181.)

## BALZ v. SHAW.

(Common Pleas of New York City and County, General Term. June 3, 1895.)

1. SALE—TO WHOM MADE.
    Two persons representing themselves as S. and wife negotiated the purchase of a piano from plaintiff, part of the purchase money to be paid on delivery of the piano, and notes secured by a chattel mortgage to be given for the residue. The piano was delivered, and the cash payment was made by the woman, who also executed the chattel mortgage. The notes were also signed, but were not delivered, because of some error therein, and it was agreed that new ones should be made out. Afterwards S. went to plaintiff's store, and offered a note of a third person in place of the notes specified in the mortgage, which plaintiff accepted, giving S. a receipt acknowledging payment "by note" of the amount due on the piano. *Held*, that the sale of the piano was to the woman, and a chattel mortgage executed by the man S. to defendant was void as against plaintiff, though plaintiff's mortgage was never filed.

2. CHATTEL MORTGAGE—SATISFACTION—TAKING NOTE OF THIRD PERSON.
    Where the holder of notes secured by chattel mortgage takes the note of a third person in lieu of the notes mentioned in the mortgage, such act alone does not discharge the mortgage.

3. SAME—CONVERSION OF MORTGAGED GOODS—WHEN ACTION LIES.
    Where a chattel mortgage given to secure the purchase price of the mortgaged goods provides that the whole sum shall become due if the

goods are removed from a certain place, the mortgagee, on the removal of the goods, may sue for the conversion thereof, though a note taken for the price is not due.

Appeal from city court, general term.

Action by Jacob Balz, Jr., against D. McLean Shaw. From a judgment of the city court (32 N. Y. Supp. 791) affirming a judgment entered on a verdict in favor of plaintiff, defendant appeals. Affirmed.

Argued before BOOKSTAVER, BISCHOFF, and PRYOR, JJ.

J. M. Fisk, for appellant.

John P. Schuchman, for respondent.

BOOKSTAVER, J.   On the 23d of December, 1893, two persons, representing themselves to be Mr. and Mrs. Schwartz, called at plaintiff's place of business to purchase a piano, and, after some negotiations, plaintiff sold them an upright for the sum of $450, the piano being delivered the following day, at 244 West Fifty-Second street, at which time $10 of the purchase price was to be paid, and notes to be given for the remainder, running 60, 90, and 120 days, respectively, to be secured by a chattel mortgage on the piano.   The following day the piano was delivered at the place designated, and the $10 was paid by the person representing herself as Mrs. Schwartz, who at the same time signed the chattel mortgage.   The notes specified in the mortgage had then been filled out and signed, but, as they did not specify the place where they should be made payable, it was agreed that new notes, with the name of the bank inserted, should be made, and sent to the plaintiff, and the salesman thereupon took the money and the chattel mortgage.   On the 29th December following, Mr. Schwartz went to plaintiff's store, and offered instead of the three notes a promissory note made by one George Marks for $529.30, dated December 23, 1893, payable 90 days after date.   This note was accepted by plaintiff as a substitute for the notes called for in the chattel mortgage, and was not due at the time when this action was brought.   At the time of the giving of this note, Schwartz asked payment of the difference, but the plaintiff instead gave him a receipt for $440 on account of the piano, and also an acknowledgment that, when the note was paid, Schwartz should receive the difference.   The chattel mortgage was never filed.   The evidence on the part of the defendant tended to show that Schwartz, about January 2, 1894, applied to the defendant for a loan of $600 on property in the house 244 West Fifty-Second street, including the piano in question.   Defendant sent an agent to examine and report on the piano and other furniture, and the value, and after such report, showing the piano was in the possession of Schwartz at his residence, and after Schwartz had shown him the receipt given him by the plaintiff, which was in the following language: "Baus Piano Factory.   J. Balz, Proprietor.   Warerooms, 113 East 14th St.   $440.00.   New York, Dec. 29, 1893.   Received of Mr. J. Schwartz four hundred and forty (by note) dollars on account of piano.   [Stamped] Jacob Balz.   Dec. 29, 1893.   [Signed] Jacob Balz."   Defendant agreed to loan $550.   Before doing so, he caused

a search to be made in the register's office for chattel mortgages or liens on the property, and found none, and thereupon gave Schwartz his check for $550; and Schwartz gave him two notes, for $275 each, and signed and delivered to defendant a chattel mortgage on various articles of household property, including the piano in question, and also made an affidavit that there were no liens against the same. Subsequently, for an additional loan made by defendant, Schwartz gave him a second chattel mortgage. On or about February 8, 1894, defendant took possession of the property described in the chattel mortgages, including the piano in question, they being on the premises in Fifty-Second street, and had possession of the same when this action was commenced.

At the close of the plaintiff's case, and again when all the evidence was in, the defendant moved to dismiss the complaint, on the grounds: (1) That the sale from Balz to Mrs. Schwartz was an absolute, and not a conditional, one, taking back a chattel mortgage for the purchase price of the property, which was never filed or recorded; consequently, that the title to the property vested in the purchaser free and clear at that time of all rights of the plaintiff, so that the purchaser had a right to do as she wished with the piano. (2) That on the 26th or 29th day of December, whatever is the date, the receipt was given vesting the title in Mr. Schwartz to the piano in question, so that the chattel mortgage or conditional agreement whereby they were to give certain notes was done away with and canceled, and the new contract substituted therefor. (3) Because this action was commenced prior to the time when the note matured, and therefore was prematurely brought. (4) Because on the 14th February, 1893, the plaintiff, having taken the note of a third party, and given the receipt he did, waived the conditional payments and the chattel mortgage, and therefore had no right to the delivery of the piano to him, or to demand the same from the defendant. The court denied the motion, and submitted the case to the jury, in a charge more favorable to the defendant than either the facts or the law warranted; indeed, so favorable that, had the jury found a verdict in his favor, the judgment would necessarily have been set aside on account of errors in the charge.

After the charge, one of the jurors asked a question which went to the vital point in the case, namely: "If the lady represented as Mrs. Schwartz owned the piano, what right had Mr. Schwartz to dispose, bargain, or barter the instrument in any way,"—to which the court replied: "I charge you in reference to that matter that the presumption of law is that Mr. Schwartz was the owner at the time he made the mortgage to Mr. Shaw, and the question for you to determine is, are there any circumstances in the case which would indicate that that fact is not true. You will bear in mind that an individual may buy property one moment, and cease to be the owner the next, because he may transfer it. Therefore, I charge you in this case that the presumption of law is that Schwartz was the owner at the time he made the mortgage to Shaw." This was certainly as favorable to the defendant as he could have asked; yet the jury found there were circumstances in the case which rebutted

that presumption, as they well might, when Mr. Shaw, on the 12th February, 1894, before the action was commenced, and knowing all the circumstances proved in the case, wrote to the warehouseman: "Mr. Balz claims the piano.   I think the sale is a conditional one. If you agree with me, then deliver the piano to Mr. Balz," upon certain conditions.   From the facts in the case, it is clear that the sale was made to Mrs. Schwartz, and not to Mr. Schwartz.   She gave back the chattel mortgage.   While this mortgage was never filed, still it was valid as between the plaintiff and Mrs. Schwartz, the mortgagor; and as against her he was entitled to the immediate possession, because of her breach, among other things, of the condition and provision as to keeping the piano for her own use on the premises designated in the mortgage, which may be inferred from the fact that she was in possession of it last before the defendant obtained possession in the absence of explanation.   She paid a part of the purchase price.   The fact that the husband subsequently negotiated with the plaintiff that the balance was to be received in a note of another person, instead of Mrs. Schwartz, in no way changes the relations of the parties.   Any one has the right to pay the debt of another if he chooses, and the mere fact of his doing so would not make him the owner of the property.   Had the defendant's mortgages been executed by Mrs. Schwartz, they would have had priority over the mortgage executed to the plaintiff, because then the statute in regard to the filing of chattel mortgages would have governed. But the defendant took his chattel mortgages from Mr. and not Mrs. Schwartz.   There is absolutely nothing in the case which tends to show that he ever became the owner of the property by assignment or otherwise from his wife.   Consequently, he could give no title to the piano through the mortgages, as no one can give to another a better title than he himself possesses.   26 Am. & Eng. Enc. Law, 778.   The appellant in his argument entirely overlooked the chattel mortgage executed to the plaintiff, nor did he seek to establish on the trial any title in the party from whom he received his mortgage other than that which might be inferred from the fact that Schwartz executed the mortgages, and was in the apparent possession of the property, and his affidavit to the effect that he was the owner and it was unincumbered.

Nor, in our opinion, did the receipt given on the 29th December, 1893, when the Marks note was accepted by the plaintiff, either supersede the chattel mortgage given by Mrs. Schwartz or constitute a bill of sale to Mr. Schwartz.   It is in the words and figures following:   "Baus Piano Factory.   J. Balz, Proprietor.   Warerooms, 113 East 14th St.   $440.00.   New York, Dec. 29, 1893.   Received of Mr. J. Schwartz four hundred and forty (by note) dollars on account of piano.   [Stamped] Jacob Balz, Dec. 29, 1893. [Signed] Jacob Balz."   The plaintiff testified that, when he received the Marks note, he did not make any inquiry as to the standing of the maker of that note, as he thought he had his contract (meaning mortgage) from Mrs. Schwartz, and that he did not ask anybody about the responsibility of the maker of that note.   This clearly shows that he did not intend to give up the lien which he

had by reason of his mortgage. In the absence of any agreement to take a security in absolute satisfaction of a debt, the intendment of the law is that such is a conditional payment only; that is, if the note is paid, the debt is discharged, and otherwise not. The agreement to take one security instead of another must be proved, and, if any inference is to be drawn for silence or want of evidence on that subject, it is in favor of the payment being a conditional one. Greenwich Ins. Co. v. Oregon Imp. Co., 76 Hun, 194, 27 N. Y. Supp. 794. The receipt given by the plaintiff to Schwartz, and shown Shaw, is not a bill of sale. It does not purport to convey title. It is simply an acknowledgment that Schwartz personally handed plaintiff a promissory note on account of the piano, but does not indicate to whom the piano was sold, or by whom the note was made; and, even if it might be held to be an evidence of a sale to any one, it does not indicate whether that sale was absolute, conveying immediate title, or conditional upon the payment of the note. It does, however, indicate the party from whom the piano was received, and gave to the defendant notice that, by inquiry of the plaintiff, he could have obtained full information in regard to the transaction. If he chose to rely upon the representations of Schwartz and the inference to be drawn from the apparent possession, instead of going to the plaintiff, who would have been bound by any information he gave Shaw, he must abide the consequences.

The language of Woodruff, J., in Spraights v. Hawley, 39 N. Y. 441, on this question in a similar case, is very apropos:

"The appellants contend upon some general idea that because the mortgagor had possession, and the defendants honestly believed they were owners, and in that belief, innocent of any wrongful intent, sold the property, and paid over the profits, it is not just that he should be held responsible. In other words, it is, as to the defendant, a hard case. Now, all this would be very well if it were true that mere possession of personal property was such evidence of ownership or of authority to dispose thereof that all persons were at liberty to assume such ownership or authority, and act in reliance thereon. Unfortunately for the appellants this is not so. Indeed, the cases in which possession imports such authority are very few, and the mere fact of possession, unaccompanied by other circumstances giving it a specific character indicative of authority, never does."

The contention that this action for conversion, having been commenced before the Marks note matured, was premature, is not well founded. As before shown, the Marks note was not taken in lieu of the mortgage, but as additional security. The provision in the mortgage that the piano should not be removed from the place where it was delivered having been violated, the whole sum became due, and the plaintiff therefore had not only title, but right, to the immediate possession of the piano, and could maintain trover for it.

We, therefore, think there was no error in the refusal of the court to dismiss the complaint, and that it was properly submitted to the jury, whose finding upon the question of ownership and right to possession is conclusive upon us.

Appellant's counsel urged strongly upon the argument that a new trial ought to be granted because of the rulings of the court, in the progress of the trial, wherein it stated that it would put the

defendant on his defense to show that he was a purchaser in good faith, and intimated that, if that were shown, the defendant would be entitled to a verdict; that, in consequence of this ruling, the defendant made no attempt to offer additional testimony on other points, and took no exception to a ruling excluding evidence which, if admitted, would have been of benefit to the defendant. This argument might properly have been addressed to the general term of the city court, which had the right to set aside the verdict as contrary to evidence or in the furtherance of justice; but this court can review the case only upon the exceptions presented by the record, and, as there are no exceptions to this ruling or to the exclusion of evidence, we have no power to set aside the verdict or consider any objection which is not based upon some exception taken at the trial.    Schwinger v. Raymond, 105 N. Y. 648, 11 N. E. 952.    Besides, a party cannot take advantage of an erroneous ruling in his favor, and go to the jury upon an erroneous theory, and then, if he fails, seek to set aside a verdict rendered against him.

No error having been committed by the court prejudicial to the appellant, the judgment must be affirmed, with costs.    All concur.