THE H. B. CLAFLIN COMPANY, Appellant, *v.* EUGENE ARNHEIM and Others, Respondents.

*Preference by a failing debtor — extension of time obtained by fraud —judgments confessed during such extension, set aside.*

There is no law which prevents a failing debtor from giving to any creditor that he may select a preference by means of a confession of judgment for any valid debt. He may practically prefer his creditors to as great an extent as his property permits, provided he does so by giving mortgages or bills of sale, or confessing judgment, instead of putting such preference in a general assignment for the benefit of creditors, which alone the statute condemns.

A person will not be allowed, by fraudulent promises or agreements, to deprive the plaintiff in an action of the benefit which, but for such fraud, he would have obtained.

In an action brought to restrain the defendants, who were judgment creditors, from collecting the proceeds of certain executions issued by them against their debtor, and to have the plaintiff's judgment which was subsequently obtained declared to be a prior lien upon the proceeds of such executions in the hands of the sheriff, it appeared, on the plaintiff's motion for an injunction to restrain the sheriff from paying out the proceeds until the determination of the action, that the plaintiff had commenced an action against the debtor, and before the latter's time to answer had expired, an extension of his time to answer was granted upon his promise to pay the plaintiff's claim, and not to dispose of his property in the meantime, and that notwithstanding the representations thus made, that if the extension were granted there would be no change in his (the debtor's) property, that no judgments would be entered against him, that the plaintiff would not in any way be prejudiced by the delay, and that the debtor would pay the plaintiff's claim in installments, such debtor, in violation of his promise, and with a view to defrauding the plaintiff and to prevent his obtaining a preference, confessed judgment in favor of the defendants, five of his other creditors.

It was neither alleged nor claimed that the confessed judgments were fraudulent, or that the judgment creditors were parties to any fraud.

*Held,* that the action was maintainable, and that the right to enter the judgment which the plaintiff had secured could not be postponed by the fraud of his debtor, and such judgment be thus made subsequent and subordinate to judgments confessed by him to other of his creditors for antecedent debts.

APPEAL by the plaintiff, The H. B. Claflin Company, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 23d day of January, 1895, denying the plaintiff's motion for an order enjoining and restraining the sheriff of the city and county

of New York, his servants, agents and attorneys, from delivering or paying over to any of the defendants, or their agents or attorneys, or in any manner disposing of, until the determination of this action, or the further order of the court, any or all the proceeds of the property of the defendant Eugene Arnheim, derived by the sale thereof under executions, and vacating the stay heretofore granted in the action.

*Kneeland & Stewart,* for the appellant.

*Joel M. Marx,* for the respondents.

O'BRIEN, J.:

This action is brought to restrain the defendants, who are judgment creditors, from collecting the proceeds of certain executions issued against one Eugene Arnheim, and to have plaintiff's judgment, which was subsequently obtained, declared to be a prior lien upon the proceeds in the hands of the sheriff.

The motion for an injunction to restrain the sheriff from paying out the proceeds until a determination of the action was made upon the complaint and affidavits, from which it appears that plaintiff had commenced an action against Arnheim, the debtor; that before the latter's time to answer had expired, an extension of time to answer was granted upon his promise to pay the plaintiff's claim and not to dispose of his property in the meantime; that notwithstanding the representations thus made, that if the extension were granted " there would be no change in his (the debtor's) property in the meantime, that no judgments would be entered against him, and the plaintiff would not in any way be prejudiced by the delay; that its rights would be preserved, and that he, the defendant Eugene Arnheim, would pay the plaintiff's claim in installments," the defendant, in violation of his promise, and with a view to defraud the plaintiff and to prevent his obtaining a preference, confessed judgments in favor of five other creditors.

It is neither alleged nor claimed that the confessed judgments are fraudulent, or that the judgment creditors were parties to any fraud. There is no law which prevents a failing debtor from giving any creditor that he may choose a preference by means of a confession of judgment for any valid debt. It is insisted, however,

that the right to enter judgment which plaintiff had secured could not be postponed by the fraud of Arnheim, the debtor, in favor of the judgments confessed to the other defendants for antecedent debts, and to support this contention reference is made to the cases of *Clark* v. *Taylor* (37 Hun, 312) and *Jaques* v. *Greenwood* (12 Abb. Pr. 232).

In *Clark* v. *Taylor* the plaintiffs were about to enter judgment against one Taylor, whose time had expired. If such judgment had been then entered, the amount thereof could have been collected upon the execution issued thereon. To induce the plaintiffs to refrain from so doing, Taylor agreed that he would pay the claim by frequent partial payments before November first, and that if he concluded to make a general assignment he would give the plaintiffs notice of his intention so to do ; Taylor also made a false statement as to his assets and liabilities. The proposition having been accepted on the twenty-seventh of September, Taylor, on the twenty-eighth, without giving any notice to plaintiffs, made a general assignment. Upon the trial the court found that Taylor intended to make the assignment at the time of entering into the agreement, and that he made the agreement for the purpose of preventing the plaintiffs from exercising their legal rights, and to gain time in which to make the assignment. It was held that the assignment was fraudulent as to the plaintiffs, and as to them should be set aside. In the course of the opinion it was said : "It is settled in this State that an assignment for the benefit of creditors is not voidable, because it prevents a creditor from acquiring a lien by an impending judgment, attachment or execution. * * * Whether this assignment is fraudulent and voidable as against the plaintiffs depends upon the intent of the assignor. If it was conceived and executed for the purpose of depriving the plaintiffs of a valuable legal right, it is voidable as against them. * * * An assignee is not a purchaser in good faith, but stands in the shoes of the assignor."

And in *Jaques* v. *Greenwood* a judgment having been taken by default against the firm, they obtained a stay of proceedings on the pretense that they had a defense to the action (which they failed to show), and on the assurance of their attorney that they would not make any assignment. Meanwhile they made an assigment for the

benefit of creditors, giving preferences thereby, and preventing the judgment creditors from realizing anything upon their execution. Held, that the assignment was void as against such judgment creditors, as being made with intent to hinder and delay them.

The weight to be given to these cases as authority is not lessened by the case of *Wood* v. *Mitchell* (44 N. Y. St. Repr. 694), for there no promises or agreements were made by the judgment debtor, all that appeared being that in the ordinary way, in pursuance of a legal right, an extension of time was procured in which to answer, and before the expiration thereof judgments upon just and legal debts were confessed. It was therein held that upon these facts the action of the attorneys could not be held to be a fraud on the plaintiff in the action in which the extension was obtained; and it was therein said: "There was here no agreement, express or implied, that pending the extended time the existing status should not be changed by any act of the defendant. The case, therefore, is not analogous to *Jaques* v. *Greenwood* (12 Abb. Pr. 232)," and we might add nor is it analogous to the case of *Clark* v. *Taylor* (*supra*). They are authority for the proposition that by fraudulent promises or agreement one cannot succeed in depriving a plaintiff in an action of a benefit which but for such fraud he would have obtained.

It will be noticed that the cases referred to (*Clark* v. *Taylor* and *Jaques* v. *Greenwood*) were brought to set aside general assignments for the benefit of creditors upon the ground that as to the creditor induced to refrain from entering a judgment by the fraudulent representations of the assignor, they were invalid. And upon this circumstance the respondents base a claim that a distinction is to be observed between the rights which creditors secure under an assignment and those that are obtained upon confessions of judgment, and to support this alleged distinction our attention is directed to many decisions which are like, or dispose of questions similar to, those involved in *Manning* v. *Beck* (129 N. Y. 1), *Abegg* v. *Bishop* (142 id. 286) and *London* v. *Martin* (79 Hun, 229). In the latter case it was said by this court: "A failing debtor may now practically prefer his creditors to as great an extent as his property permits, provided he does it by giving mortgages and bills of sale, or confessing judgments, instead of putting it in the general assignment, which it is said the statute alone condemns." This is a cor-

rect statement of the law, and the error into which the respondents have fallen is in confusing the statute therein referred to (which was the act of 1887, relating to general assignments for the benefit of creditors) with the Statute of Frauds.

Upon an examination of these cases it will be found that no such question was involved as the distinction between the case of an assignment and a judgment suffered as affected by the statute relating to fraudulent conveyances. That statute was not under consideration and the language used was not intended to apply to it, but to another statute, viz., the statute of 1887 prohibiting the making of preferences in an assignment beyond a certain portion of the estate. And the court held in these cases in regard to that statute that a judgment obtained was not invalidated by such action of a debtor who confesses judgment to a creditor who in good faith acts for the purpose of obtaining security for the payment of an honest debt due from the debtor to himself. A reading of the opinion in *Manning* v. *Beck* (*supra*) shows that the only question discussed was the statute in respect to preferences in assignments, and there is no determination of any question under the Statute of Frauds. It is true the court says: " It does not seem to us that either the letter or the spirit of our statute covers a case where the creditor is ignorant of any intended violation of the statute by the debtor." The statute being discussed was that in respect to assignments, and it was the alleged attempt to circumvent that statute that was under consideration. We think, therefore, that there is no authority for the position that a distinction is to be made between the rights of a party holding under an assignment and one obtaining a lien by a confessed judgment. The Statute of Frauds makes no such distinction. An assignment and judgment suffered are placed in the same section and in the same category, and in both the intent of the debtor controls the validity of the action, entirely independently of the knowledge or intent of the creditor. It provides that " Every conveyance or assignment in writing or otherwise of any * * * goods or things in action * * * made with the intent to hinder, delay or defraud creditors or other persons * * * and every bond or other evidence of debt given, suit commenced, decree or judgment suffered, with the like intent as against the persons so hindered, delayed or defrauded shall be void."

(2 R. S. 137, § 1.) Where then is there any distinction to be made between an assignment of goods or things in action, and a judgment suffered by which a creditor obtains a lien through execution upon such goods or things in action? If the assignment is made or the judgment suffered with intent to hinder, delay or defraud creditors, such assignment and such judgment are both void. The statute leaves no ambiguity upon this subject. There is no ground for distinction; the one comes under the ban of the statute just as well as the other.

It is said that in the case of an assignment for the benefit of creditors the assignee stands in the shoes of the assignor. In the case of the confession of a judgment does the creditor do any more? By the fraudulent act of the debtor machinery is set in motion for the obtaining of a lien, and such lien is of no greater dignity than if an assignment of the thing had been made and the thing transferred to the assignee for the purpose of defrauding creditors. There is no distincton between an assignment to a trustee for the benefit of the creditor and a direct assignment to the creditor. The statute certainly intimates none; and the evils to be obviated require no such distinction to be made. The language is: "Every bond or other evidence of debt given, suit commenced, decree or judgment suffered with the like intent." If the statute had stopped there, even if a party paid value for the property without notice of the fraudulent intent of the debtor, the conveyance to him would necessarily be held void. And it was to save innocent purchasers that section 5 of title 3 of the Statute of Frauds was enacted. That section reads: "The provisions of this chapter shall not be construed in any manner to affect or impair the title of a purchaser for a valuable consideration, unless it shall appear that such purchaser had previous notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such grantor." (2 R. S. 137.) What was the necessity of this portion of the enactment if it was only necessary, in order to escape the previous provisions of the law, to show that the creditor had no notice of the fraudulent intent of his assignor or of his judgment debtor? The section in question expressly impeaches the title of a person who buys for value with notice of such

intent; and the purchaser for value without notice is the only person that is protected from the operation of the statute. If a debtor does these things — makes an assignment or conveyance or suffers judgment with intent to hinder, delay or defraud creditors — his act is voidable at the instance of creditors as against all the world except a *bona fide* purchaser for value; and he cannot be a *bona fide* purchaser unless he is ignorant of the fraudulent intent. It does not seem necessary to multiply words upon this proposition, as the statute is so explicit that it needs no discussion for its elucidation, and words in such a case would tend only to obscurity. If any other authority be needed the case of *Starin* v. *Kelly* (88 N. Y. 418) is directly in point.

It will thus be seen that we reached the conclusion that the distinction sought to be made between an assignment and a judgment suffered, is illusory, and that the statute is not so solicitous as to the manner in which the fraud is accomplished as it is in determining the question of whether actual fraud was intended and consummated to the injury of another. The mode or character in which the transfers are made can make no difference, the suffering of a judgment, the transfer or insolvent act being voluntary, and in each the third parties not parting with anything upon the faith thereof. The results obtained are the same although the methods may be different. In both the debtor voluntarily puts liens upon his property, and neither the creditors under the assignment nor the judgment creditors part with anything on the strength of the confessions or the making of the assignment from which they may receive benefit, and neither the confessions nor the making of the assignment require any act on the part of either class of creditors.

Our conclusion, therefore, is, that the right to enter judgment, which the plaintiff had secured, could not be postponed by the fraud of Arnheim and such judgment thus be made subordinate to the judgments confessed to the other defendants for antecedent debts.

The judge at Special Term, though not disputing the existence of the facts set forth in the papers upon which the motion for an injunction was made, denied the motion upon the ground that he did not think the action could be maintained. In this, we think, for the reasons stated, the learned judge erred.

The plaintiff, therefore, having a right to maintain the action, and

having made a showing entitling him to an injunction, we think the order should be reversed, with ten dollars costs and disbursements, and the motion granted, with ten dollars costs.

VAN BRUNT, P. J., and PARKER, J., concurred.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.